NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO R.M. and B.M.

No. 1 CA-JV 25-0055

FILED 11-28-2025

---

Appeal from the Superior Court in Maricopa County
No. JD532070
The Honorable Jay M. Polk, Judge

**AFFIRMED**

---

COUNSEL

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Phoenix
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1** Liza W. ("Mother") appeals the juvenile court order terminating her parental rights. She argues that insufficient evidence supported the statutory termination grounds and that the court did not consider the totality of the circumstances in its best-interests finding. Because reasonable evidence supported at least one of the statutory grounds and the best-interests finding, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** Mother is the parent of Ruby (a pseudonym), born in 2018, and Bryce (also a pseudonym), born in 2023.

**¶3** In 2018, the Department of Child Safety ("DCS") filed a dependency alleging Ruby was dependent because of Mother's substance abuse and her history of domestic violence with the children's father ("Father").[1] In August 2021, the court dismissed the dependency at DCS's request after the reunification of Mother and Ruby.

**¶4** One and a half years later, Mother gave birth to Bryce. Bryce was born substance exposed. The next month, Mother tested positive for fentanyl and THC. In May 2023, DCS filed a dependency alleging that Ruby and Bryce were dependent due to neglect, substance abuse, and domestic violence.

**¶5** Mother did not keep DCS advised of her whereabouts during much of the dependency, and by August 2024, Mother had not completed any of the reunification services DCS provided and was still using fentanyl. DCS moved to terminate Mother's parental rights, and the juvenile court held a contested severance hearing in February and March 2025. Mother

---

[1] Father's rights were also terminated, but he is not a party to this appeal.

testified that, as of the hearing, she was four months sober from fentanyl, recently employed, and had a protective order against Father.

¶6        Despite Mother's recent efforts, the juvenile court found that DCS had proven, by clear and convincing evidence, two statutory grounds for termination under Arizona Revised Statutes ("A.R.S.") § 8-533: substance abuse under subsection (B)(3) and fifteen months of time-in-care under subsection (B)(8)(c). The court also found that termination was in the children's best interests. Mother appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## STANDARD OF REVIEW

¶7        "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376, ¶ 13 (App. 2010) (quotation omitted). On appeal, we review the juvenile court's factual findings for clear error. *Id.* We will not reweigh the evidence or redetermine the credibility of witnesses, *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151-52, ¶¶ 18-19 (2018), and we view the evidence in the light most favorable to affirming the juvenile court's decision, *Raymond F.*, 245 Ariz. at 376, ¶ 13. To terminate a parent's rights, DCS must prove one of the statutory grounds found under A.R.S. § 8-533 and that termination is in the child's best interests. *See Alma S.*, 245 Ariz. at 149-50, ¶ 8. Proof of the statutory ground must be by clear and convincing evidence, but the court needs only to find termination in the child's best interests by a preponderance of the evidence. *Id.*

¶8        Mother challenges the court's ruling on the statutory findings on factual and legal grounds. Because we conclude that the court did not err by terminating Mother's parental rights under A.R.S. § 8-533(8)(c), we do not address the other statutory ground for termination. *See Raymond F.*, 224 Ariz. at 376, ¶ 14 ("[W]e will affirm the termination if any one of the statutory grounds is proven and if the termination is in the best interest of the children.").

## DISCUSSION

¶9        "Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005); *see also Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (A parent's fundamental rights in the care, custody, and management of their

child do not evaporate simply because they have not been model parents or have lost temporary custody.). But while fundamental, these rights are not absolute, *Kent K.*, 210 Ariz. at 284, ¶ 24, and may be terminated in extraordinary circumstances, when all other efforts to preserve the relationship fail, *see In re Cochise County Juv. No. 566-J*, 133 Ariz. 157, 159 (1982).

**A.      The Juvenile Court Did Not Err by Finding 15 Months of Time-in-Placement as Grounds for Termination.**

**¶10**      The 15-month ground for termination serves as a proxy for parental unfitness, as it shows a parent's inability to care for his or her child properly. *Alma S.*, 245 Ariz. at 150, ¶ 10. Section 8-533(B)(8)(c) requires clear and convincing evidence that "(1) [the children] had been in court-ordered out-of-home placement for at least fifteen months; (2) DCS made a 'diligent effort to provide appropriate reunification services'; but despite that effort, (3) [the parent] had been unable to remedy the circumstance causing . . . court-ordered out-of-home care; and (4) there was 'a substantial likelihood that [the parent would] not be capable of exercising proper and effective parental care and control in the near future.'" *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 17, ¶ 25 (App. 2019) (quoting A.R.S. § 8-533(B)(8)(c)).

**¶11**      Here, the circumstances causing the court-ordered out-of-home care were neglect (inability to provide for the children's basic needs), substance abuse, and domestic violence. The dependency petition stated, "Mother is unable and/or unwilling and/or has failed to provide for the children's basic necessities, such as supervision, food, clothing, shelter, financial support, and/or medical care, which places and/or has placed the children at an unreasonable risk of harm. Mother has not maintained consistent contact with the newborn [Bryce]. Mother has not had contact with DCS since May 9, 2023." As to substance abuse, the dependency petition noted that Bryce was born substance-exposed and that Mother had recently tested positive for fentanyl and THC.

**¶12**      As for domestic violence, the court wrote that Mother could not safely parent because Father had a history of perpetrating domestic violence against Mother, at times in front of the children, and that while she had a protective order against Father, she had not served it on him. The evidence supports each of the court's conclusions.

**1.      15 Months**

**¶13**      The dependency was filed on May 18, 2023, three days after the children were taken into custody, and DCS moved for termination

almost exactly 15 months later, on August 20, 2024. The child was in a court-ordered out-of-care placement for the requisite period.

### 2. Diligent Efforts to Provide Reunification Services

**¶14** Mother argues DCS never provided her with domestic violence therapy. DCS must make diligent efforts to provide appropriate reunification services before terminating parental rights after 15 months in care. A.R.S. § 8-533(B)(8)(c). In offering reunification services, DCS must consider the conditions causing the child's out-of-home placement and provide services that have a "reasonable prospect of success" in remedying those circumstances. *Donald W.*, 247 Ariz. at 23, ¶ 50. Additionally, DCS must maintain consistent contact with the parent and make reasonable efforts to assist the parent in areas where compliance proves difficult. *Id.* The court must consider the totality of the circumstances when determining whether DCS has made diligent efforts to provide the services. *In re J.C.*, 259 Ariz. 60, 69, ¶ 39 (App. 2024). Here, the court found "over the course of the . . . dependency . . . DCS has made reasonable and diligent efforts to effectuate reunification of the Children with . . . [Mother]."

**¶15** DCS offered Mother services related to each circumstance that led to the out-of-home placement. To address her substance abuse issues, DCS offered Mother drug testing and substance abuse treatment. DCS also offered parenting education and support through the Nurturing Parent Program, a skills-based program.

**¶16** Mother argues that the DCS caseworker never referred Mother for domestic violence therapy. While DCS needs to make diligent efforts to provide reunification services, it "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Mother never objected to the lack of domestic violence therapy, so she waived the right to argue for the first time on appeal that DCS failed to offer appropriate reunification services. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2014). In any event, while Mother may not have received domestic violence therapy, she was referred to Family Connections, which offered domestic violence services.

**¶17** DCS also made diligent efforts to maintain consistent communication with Mother. At various points during the dependency, Mother's whereabouts were unknown, and DCS made several efforts to locate and contact her to continue its reunification efforts. Finally,

throughout the dependency, Mother was offered supervised visitation with the children, though her attendance was inconsistent.

**¶18**     By the termination hearing, Mother had completed none of the services offered. The juvenile court discussed these services and Mother's failure to complete them and found that DCS had made diligent reunification efforts. The juvenile court's finding that DCS made diligent efforts is supported by reasonable evidence.

### 3.     Unable to Remedy the Circumstances

**¶19**     DCS must provide the parent with the time and opportunity to participate in services designed to improve the parent's ability to care for the child. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶¶ 34, 37 (App. 1999). Such services provide DCS with a means to evaluate a parent's progress in remedying the circumstances that caused the child to be in DCS's care. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96, ¶ 31, (App. 2009). Mother argues that she remedied the circumstances that led to the out-of-home placement by the time of the termination hearing, and therefore, the court lacked an adequate legal basis to terminate her rights. We disagree.

**¶20**     The court must base its fact-finding on "those circumstances existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her children." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007) (quotation omitted). But DCS need not keep the remediation opportunity open indefinitely, and efforts made too late may still result in severance. *In re Maricopa County Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). The record supports the court's finding that the concerns causing the out-of-home placement persisted at the time of the termination.

**¶21**     The juvenile court determined that Mother "still does not have the ability to provide for the Children's basic needs." Throughout the dependency, Mother was out of communication with DCS and missed several of her scheduled supervised visits. She testified that she did not obtain gainful employment for at least one and a half years of the dependency and only secured steady employment a month before the termination hearing. Mother argues that the law does not consider her ineligible to meet her children's needs just because she receives State benefits. But her argument here is misplaced, because she also testified that her food stamps were cut off in January 2025, and thus such assistance could not support the children's needs.

¶22        As for domestic violence, the juvenile court found that Mother had not participated in any domestic violence services and therefore had not remedied the concerns causing out-of-home care. Mother argues that the caseworker testified that Mother was never offered domestic violence counseling. But the caseworker addressed domestic violence with Mother's Family Connections coordinator, a program that Mother failed to complete. And while Mother eventually served her protective order against Father, this did not resolve DCS's concerns, because parents may (and often do) reconcile, given their history.

¶23        As for Mother's substance abuse, at the termination hearing, she was five months sober from fentanyl but not THC. The juvenile court found, when weighed against her extensive substance abuse history and multiple failed attempts at sobriety, her current sobriety was "insufficient to show that she ha[d] remedied concerns regarding her substance abuse." Mother argues that the court's concerns were not an adequate legal basis when the record showed current sobriety. But the court made its finding after weighing her history of drug use against her current sobriety. *See JS-501568*, 177 Ariz. at 577 (Successful efforts at recovery made too late may still result in severance.). As commendable as Mother's sobriety may be, this court does not reweigh the evidence, as that is the exclusive domain of the juvenile court. *See Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (We will not disturb the juvenile court's orders if they are supported by reasonable evidence.).

¶24        Finally, while Mother argues that she has remedied the circumstances that led to the children being taken into care, she does not address her failure to complete any of the services offered to her during the 15 months her children were in DCS's care. Mother's efforts from the fall of 2024 to the 2025 hearing are not enough to overcome her lack of engagement over the previous 15 months. *See In re Z.L.*, 256 Ariz. 138, 144, ¶ 24 (App. 2023) (Failure to attend visits or participate consistently in services makes the chances of rehabilitation low.). The evidence supports the juvenile court's findings.

### 4.    Likelihood the Parent Will Not Be Able to Parent in the Near Future

¶25        Mother argues that the record supports her ability to "immediately parent her children." Under A.R.S. § 8-533(B)(8)(c), DCS must prove "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." The juvenile court found it was "substantially likely that . . .

[Mother] will [not] be capable of exercising proper and effective care in the near future." The record supports this finding, as the caseworker testified that she estimated the earliest Mother could reunify with the children would be a year. The caseworker based this estimate on how long it would take Mother to complete services, followed by an implementation period supervised by DCS. We find no error.

¶26         The juvenile court's finding of 15 months' out-of-home placement as a ground for termination was supported by reasonable evidence and Mother has shown no error.

**B.      The Court's Best-Interests Inquiry Properly Considered the Totality of the Circumstances.**

¶27         Mother also challenges the juvenile court's best-interests findings. After the court finds a parent unfit, "the focus shifts to the interests of the child as distinct from those of the parent." *Alma S.*, 245 Ariz. at 150, ¶ 12 (quotation omitted). The child's stability and security must be the court's primary concern. *Id.* "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Id.* at ¶ 13. And it is well-established in State-initiated cases that the child's prospective adoption may serve a benefit supporting a best-interests determination, *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 12 (2016), so long as the court considers the totality of the circumstances existing at the time of the severance, *Alma S.*, 245 Ariz. at 150-51, ¶ 13.

¶28         Mother argues the court's best-interests findings were flawed because it "mistakenly believed that Mother was required to independently meet all the financial and housing obligations needed to care for her children." Mother mischaracterizes the court's findings. The court did not find that Mother could not meet the children's needs because she received aid from her parents and government-assisted care to provide for them. Instead, it found that, even accounting for these forms of support, Mother could not reliably meet her children's needs. The court determined that Mother only had gainful employment for less than a month before the hearing and noted "she had been receiving food stamps, but they were 'cut off' in January 2025."

¶29         As to assistance from her parents, the court wrote that Mother had lived with them "on and off forever," and that she did not pay rent. The court must consider the totality of the circumstances, and Mother's

reliance on outside aid may factor into that analysis. *See Alma S.*, 245 Ariz. at 150-51, ¶ 13.

**¶30** The court also found Bryce had been in out-of-home care for all but the first month-and-a-half of his life, and that his bond with the placement was an "equally strong bond, if not a stronger one." As for Ruby, the court noted that she had lived in the placement for more than half her life and called it home. Because the placement was meeting the children's needs and adoption was legally possible and likely, the court found that termination was in the children's best interests. *See Demetrius L.*, 239 Ariz. at 4, ¶ 12; *see also Bennigno R. v. Ariz. Dep't of Econ Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013). The record contains reasonable evidence supporting the court's best-interests finding. *See Demetrius L.*, 239 Ariz. at 6, ¶ 21.

## CONCLUSION

**¶31** We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR